## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (NORTHERN DIVISION)

**LORRETTA KLINE, in her Individual Capacity**      *
**And as Personal Representative for the**
**ESTATE OF ROGER LEE LARGENT**      *
519 Lynnehaven Drive
Hagerstown, Maryland 21742      *

         *Plaintiff*      *

    v.      *

**STATE OF MARYLAND**      *
**MARYLAND DEPARTMENT OF PUBLIC**
**SAFETY AND CORRECTIONAL SERVICES,**      *
300 East Joppa Road, Suite 1000
Towson, Maryland 21286      *

     SERVE ON:    Nancy K. Kopp, State Treasurer      *
                 Goldstein Treasury Building
                 80 Calvert Street, Room 109      *
                 Annapolis, MD 21401
                 *

    and      *

**RICHARD J. GRAHAM, JR., FORMER WARDEN**      *
Western Correctional Institute
3800 McMullen Highway, SW      *
Cumberland, MD 21502
           *

     *Defendant.*      * Case No.: 1:20-CV-00722JKB

   *     *     *     *     *     *     *     *     *     *     *     *

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES, Plaintiff Lorretta Kline, in her Individual Capacity and as the Personal

Representative of the Estate of Roger Lee Largent, by and through undersigned counsel Anton L.

Iamele, and IAMELE & IAMELE, LLP hereby sues the Defendants State of Maryland and Richard

J. Graham, Jr. Plaintiffs fully incorporate the original Complaint as if restated herein and state

further:

## Introduction

1. This is an action for monetary damages brought pursuant to the common law of the State of Maryland, 42 U.S.C. §§ 1983 and 1988, the Eighth and Fourteenth Amendments of the United States Constitution, and the Maryland Declaration of Rights. Plaintiffs maintain the State of Maryland, through its operation of the Department of Public Safety and Correctional Services and the Western Correctional Institution, was negligent; that Richard J. Graham, Jr., who is sued in his individual and official capacities, violated Decedent Largent's rights under the Eighth Amendment of United States Constitution, as well as, his corresponding right not to be subjected to cruel and unusual punishment under the Maryland Declaration of Rights; and allege that the Department of Public Safety and Correctional Services otherwise violated Decedent Largent's rights under the Maryland Declaration of Rights.

## Parties

2. Decedent Roger Lee Largent was born on November 11, 1947 and passed away on February 11, 2017. The Estate of Roger Lee Largent was opened by the Register of Wills for Washington County on February 23, 2017, and Lorretta Kline, who was then residing at 8645 Sharpsburg Pike was appointed as the personal representative for the same.

3. Decedent Largent is survived by his adult biological daughter, Plaintiff Lorretta Kline, 519 Lynnhaven Drive, Hagerstown, Maryland 21742, who is a primary beneficiary in this action pursuant to MARYLAND ANNOTATED CODE, *Courts & Judicial Proceedings Article §3-904.*

4. The Department of Public Safety and Correctional Services (hereinafter "DPSCS") is an executive department of the Maryland State Government, which was and is responsible for operating the Western Correctional Institute, 3800 McMullen Highway, SW, Cumberland, MD

21502 (hereinafter "WCI"). At all times relevant to this suit, the Department of Public Safety and Correctional Services was responsible for housing, protecting and upholding the constitutional rights of individuals detained in this facility, as well as, supervising, commanding and overseeing staff members working at the facility. The State of Maryland is named as a substitute party defendant as required by MARYLAND ANNOTATED CODE, *State Government Article* §§ 12-101, *et seq.*

5.  At all times relevant to the instant complaint, Defendant Richard J. Graham, Jr. was the Warden of WCI, In this stated capacity, Defendant Graham was acting under the color of state law and was responsible for and had direct oversight of, among other things, the processes of threat assessment; the procedure, process and protocol used to screen and place inmates within the WCI facility; the protection of inmates housed within WCI including the Administrative Segregation unit of the facility; the operation of the Administrative Review Office; and the response to inmate reports at WCI. He is sued in this case both in his independent and in his official capacities.

### Jurisdiction

6.  This case was initiated in the Washington County Circuit Court. This venue was appropriate under MARYLAND ANNOTATED CODE, *Courts and Judicial Proceedings Article* §6-201, *et. seq.*, in that the named defendants carried on regular business in Allegany County, Maryland. Furthermore, Decedent Roger Lee Larson was incarcerated at WCI in Allegany County after being sentenced in the matter styled *State of Maryland v. Roger Lee Largent*, Washington County Circuit Court Case No. 21K15-51744, and he remained incarcerated at WCI until the date of his death. This case was subsequently removed to the United States District

Court for the District of Maryland by the named defendants, who relied on the inclusion of a federal question as the basis for venue transfer.

7. Pursuant to MARYLAND ANNOTATED CODE, *State Government Article* §§ 12-101 through 12-109, "Maryland Tort Claims Act", written notice to the Treasurer is not required as a condition precedent to the instant action. Section 12-106(c)(2) provides that the notice requirement set forth in "Subsection (b)(1) and (2) of [the] section does not apply if, within 1 year after the injury to the person or property that is the basis of the claim, the State has actual or constructive notice of: (i) the claimant's injuries; or (ii) the defect or circumstances giving rise to the claimant's injury." As will be more thoroughly detailed herein, the State of Maryland was on notice of Decedent Roger Lee Largent's passing on the date of his death, and further had notice of the circumstances culminating in the fatality. The matter was the subject of an investigations conducted by the DPSCS and the Maryland State Police Department.

8. Plaintiffs are seeking an award of damages in excess of $75,000.00.

## Facts Common to All Counts

9. In the Spring of 2016, Decedent Roger Lee Largent was tried before a jury in the matter styled *State of Maryland v. Roger Lee Largent*, Washington County Circuit Court Case No. 21-K-15-051744. On May 16, 2016, Decedent Largent was sentenced to an 18-year term of imprisonment in connection with second-degree rape conviction following trial in the Washington County Circuit Court.

10. An appeal was timely noted on Decedent Largent's behalf. Tragically, this appeal was decided, and Decedent Largent's conviction was vacated, after he was murdered in a jail cell at WCI. The State's victim in *State of Maryland v. Roger Lee Largent*, Washington County Circuit Court Case No. 21-K-15-051744 later recanted her testimony.

11. While the appeal was pending, Decedent Largent was remanded to the custody of the DPSCS.

12. Decedent Largent entered the Maryland State correctional system as a 68-year-old man. Effective May 17, 2016, Decedent Largent was classified by Case Management for Medium Security confinement.

13. Decedent Largent was initially incarcerated at the Maryland Correctional Training Center; later transferred to the Jessup Correctional Institute ("JCI"); and ultimately spent his remaining days at the WCI. .

14. WCI is designated and approved to house maximum, medium, minimum-security, and pre-release inmates. Pursuant to controlling regulations, all inmates housed at WCI were to be housed based upon their specific housing code identifier of G (General Housing) or S (Special Housing). Pursuant WCI internal directive number 1. 230. 004.1, housing assignments of inmates at WCI were required to be made in accordance with consideration for security measures, program needs, and behaviorally oriented factors consistent with the inmates' security and/or custody level.

15. At all times relevant to this Complaint, WCI characterized and housed inmates based upon designation of "General Population"; "Protective Custody"; "Administrative Segregation"; "Disciplinary Segregation" or "Special Needs Housing."

16. At all times relevant to this Complaint, in a manner that is consistent with WCI's own directive number 1. 230. 004.1.05 A (6), single-occupancy cells were available in the facility. WCI's policies and procedures mandated that single-occupancy cells were required to be available for, among other inmates those who were deemed "likely to be exploited or victimized by others or have other special needs for single housing."

17. "Decisions regarding single cell housing" were at all times relevant to this Complaint "a matter for a variety of staff to determine consistent with applicable DOC regulations." The controlling directive provided in pertinent part:

> (iii) Inmates who are determined to be sexual predators, **who represent a danger to others, and those inmates were likely to be victimized or exploited by others** will be assessed through the case management process and PREA Screening Process for housing at this institution and/or transfer elsewhere for security reasons. Referrals for housing for these reasons will be forwarded to Case Management for review. **The chief of security, the assistant warden, and the Warden <u>will</u> review the decisions of Case Management.**

(Emphasis Supplied)

18. At all times relevant to this Complaint, in manner that was consistent with WCI's own directives, single-occupancy cells were available to Inmates held in General Population, as well as, those who were held in segregation.

19. Prior to his transfer to WCI, Decedent Largent had been placed on Administrative Segregation following reports that his life had been threatened and that he feared for his life.

20. Approximately two weeks after this placement, on or about June 30, 2016, Decedent Largent was transferred to WCI in response to JCI staff recommendation that he be transferred to a medium security institution.

21. Upon arrival at WCI, Decedent Largent was returned to the General Population. Shortly after his arrival, he was approached by a number of inmates, one of whom was brandishing a

makeshift knife, who threatened to kill him. Decedent Largent reported this happening to WCI Correctional Officer Wakefield the same day. He further indicated that he did not feel comfortable returning to his cell and asked to be placed in protective custody. Officer Wakefield refused the request.

22. Rather than being considered for a placement in Protective Custody, Decedent Largent was placed in Administrative Segregation and received a citation in connection with his refusal to return to a cell. Decedent Largent subsequently plead guilty to the infraction and was sanctioned to serve 45 days in Disciplinary Segregation.

23. On August 13, 2016, the sanction expired. When Decedent Largent was notified that he was coming off Disciplinary Segregation, however, his fear of returning to the general population portion at WCI persisted. Defendant Largent accordingly advised Correctional Officer M. Drew that "he was not going to move."

24. Decedent Largent received another citation and he was sanctioned for an additional 45 days.

25. Decedent Largent subsequently contacted the Maryland Department of Public Safety and Correctional Services and reported that his safety was in jeopardy at WCI due to continuing inmate threats. The DPSCS, in turn, directed Warden Graham and WCI staff to undertake a review of Decedent Largent's classification and housing situation. A team of WCI employees was assembled to undertake this review. Because Decedent Largent had only been at WCI for a single day at the time of the threatened assault, however, he did not have the ability to provide the names or other identifying information for the inmates who assaulted him. The WCI team decided that it would take no protective action and declined to place Decedent Largent in Protective Custody.

26. The team that had been assembled by Defendant Warden Graham to review Decedent Largent's classification status and housing assignment further determined that Decedent Largent should be removed from segregation and returned to general population. This recommendation was later ratified by Defendant Warden Graham's office when Acting Assistant Warden Weber, acting on the former's behalf, gave final approval for Decedent Largent to be removed from segregation status.

27. On October 5, 2016, Decedent Largent once again refused to leave segregation out of continuing fear for his safety. His segregation status was continued and he was transferred that day to cell A12.

28. On November 1, 2016, Decedent Largent authored a Request for Administrative Remedy. Decedent Largent complained that "Officer J. Wakefield" had ignored his reports that his life had been threatened by "5 inmates" and his request for placement in Protective Custody. This writing was marked as having been received by the ARP office at WCI on November 3, 2016. No action was taken and Decedent Largent was not advised of any alternate method of seeking relief.

29. On November 2, 2016, Decedent Largent submitted a second Request for Administrative Remedy concerning his continuing confinement in Administrative Segregation. By way of the ARP paperwork, Mr. Largent reported that he had requested placement in Protective Custody because he was "threat[ened] in units and each jail [he had] been too." Mr. Largent explained further in the ARP form:

> I had my life threat[ened] and I had to go to lock up…. Its not
> doing me no good and I need to be placed on [Protective Custody]
> and the [DPSCS] need[s] to find me a safe jail to go to so I write
> my case manager up because she aint call me to ask be about this

matter at all…. Locking me up for 45 days isn't helping me at all. I'm 69 years old and I am no troublemaker and I am sick….

This Request for Administrative Remedy was also marked as having been received in the ARP Office at WCI on November 3, 2016. Again, no action was taken.

30. On November 7, 2016, Decedent Largent wrote directly to Defendant Warden Graham and requested that he become involved in the ongoing housing designation/protective custody. Decedent Largent's letter read as follows:

> Hello. My name is Roger Largent DOC number 447-475 and I'm currently housed in cell number four-A-12 A.
>
> I arrived here at WCI from JCI on June 30, 2016 and was placed in housing unit number 5-A-23B.
>
> This same day June 30th 2016 upon returning to the tier from the dinner meal 5-inmates approached me on the tier in a violent manner, one of the inmates had a knife then one of the inmates said we know who you are, you're the guy who just got here from JCI who raped that girl in Hagerstown, she is my homeboy's sister, we are gonna kill you.
>
> Later the same evening, June 30th 2016, the same day I arrived at WCI at approximately 7 PM I exited my cell 5-A-23-B and walked to the front of the tier and approached Officer J. Wakefield co# and informed him that my life is in grave danger and that I need to be placed on protective custody. Officer J. Wakefield informed me that he was not going to place me on protective custody that "if" my life was in danger the best he could do is write me a ticket for refusing housing and have be placed on disciplinary segregation and housing unit # 4.
>
> Since that day June 30, 2016 I have refused housing three times and I'm still in housing unit number 4 for refusing housing. Because I know that my life is in grave danger in the general

population of WCI, and because the administration and staff here at WCI continue to deal with my issues and situation in a poor, informal, and unprofessional manner.

I am sending you this letter in hopes of you being able to assist me in dealing with my situation in a formal, professional, manner and being able to help me in being placed on ADMIN Seg/Protective Custody or be transferred to another institution where hopefully I can live my life in a safe environment where my life, safety, and well being is not in constant danger.

Thank you for your time and consideration in the above mentioned matters. I look forward to hearing from you in the near future.

31. Defendant Warden Graham received the writing from Decedent Largent. He directed WCI staff to investigate the situation and respond to him by November 22, 2016. WCI staff acted pursuant to Defendant Warden Graham's directive and initiated an investigation. Because Decedent Largent remained unable to identify the individuals, who had approached him on the first day of his incarceration at WCI and who he did not subsequently have any contact with while being held in segregation, the matter was not formally referred for a protective custody investigation. Defendant Graham elected not to further investigate Decedent Largent's safety needs.

32. On November 18, 2016, Decedent Largent received another Notice of Inmate Rule Violation concerning his refusal to move from segregation to the general population area of the facility. Officer V. Lark wrote a corresponding report indicating: "Inmate Largent informed me that he was going to refuse to move…. I informed Inmate Largent that if he refused to move he would receive an adjustment for refusing housing." Following the encounter, Decedent Largent was continued on Administrative Segregation Assignment pending a formal hearing.

33. A formal hearing, concerning the infraction issued by Officer Lark, would later be conducted on December 16, 2016. Decedent Largent accepted a plea agreement and was sentence to another 45-day period of confinement in Administrative Segregation.

34. In the interim, on December 8, 2016, Donte Antonio Frye was transferred to from the Eastern Correctional Institution. Frye was a known violent offender who had been convicted of, among other things, Attempted Second Degree Murder in 1993, Attempted Second Degree Murder in 2004, and First-Degree Assault in 2014. Frye, who was serving a 25-year sentence at the time of the subject occurrence, had a history of assaulting cellmates and also had self-reported a history of blackouts and hearing voices "telling him to kill." He was designated for "maximum security" confinement.

35. At the time of his transfer to WCI, Donte Frye was serving a sanction of disciplinary segregation in connection with a violent assault on another inmate. He was continued on disciplinary segregation at WCI.

36. Frye had a documented history of assaultive conduct during the course of his incarceration beginning on April 11, 2013. Among other instances of misconduct, he had attempted to assault correctional officers on January 22, 2015; had violently assaulted a cell mate on November 20, 2015; and had violently assaulted another inmate on October 21, 2016.

37. Moreover, Frye was known to have consistently engaged in regular assaultive behavior during a prior incarceration that spanned 2000 to 2011. Frye had been formally disciplined on 11 different occasions for assaultive conduct. He was accordingly documented to have assaulted another inmate on May 18, 2011; to have assaulted another inmate on June 21, 2008; to have assaulted another inmate on December 19, 2007; to have assaulted correctional staff on February 22, 2006; to have assaulted an inmate on October 18, 2005; to have assaulted an inmate on July

30, 2003; to have assaulted an inmate on March 24, 2003; to have assaulted correctional officers and an inmate on November 8, 2002; to have assaulted an inmate on July 3, 2000; and to have assaulted in inmate on February 15, 2000. This consistent pattern of assaultive behavior was known, actually and/or constructively, to WCI staff and Defendant Warden Graham.

38. Notwithstanding his known violent propensities, documented history of assault on inmates and correctional officers, and continuing segregation in connection with a violent attack on another inmate immediately before his arrival at WCI, Frye was placed in cell A12 with Decedent Largent.

39. Frye, who was 6'2" tall and weighed 270 pounds, had a ready and obvious ability to physically overwhelm then 69-year-old Decedent Largent, who was 5'11" tall and weighed only 160 pounds. At all times relevant to this Complaint, Staff members knew and understood that Decedent Largent would not have the ability to fend off or otherwise protect himself from an assault initiated by Frye.

40. In the unit where Decedent Largent and Frye were housed, inmates were locked in their cells in excess of 23 hours per day and would receive all meals within their respective cell. The only times that Decedent Largent and Frye would be permitted to leave the cell would be for occasional showers and haircuts. Decedent Largent and Frye otherwise remained exclusively within the cell together.

41. Decedent Largent complained about Frye's hygiene and, in turn, Frye believed that Decedent Largent was disrespectful. The pair were engaged in an ongoing dispute.

42. Frye reported his continuing disagreements with Decedent Largent to WCI personnel. The correctional staff did not, however, undertake any efforts to quell the dispute, separate Decedent Largent and Frye, or move either of the individuals from the shared cell.

43. At all times relevant to this Complaint, the State of Maryland, through the DPSCS and its personnel working at WCI, including but not limited to Defendant Warden Grahamknew or reasonably should have known that the Decedent Largent was at risk of serious physical injury as a result of his of his ongoing confinement with Frye in the Administrative Segregation wing of the facility.

44. On Saturday, February 11, 2017, Frye and Decedent Largent were permitted to leave their cell for haircuts. During this time period, while subject to regular and ongoing surveillance by WCI staff and/or correctional officers, Frye verbally stated that he intended to kill Decedent Largent. At least one inmate has confirmed hearing the threat. WCI personnel did not, however, undertake any effort to evaluate the validity of the threat and/or shield Decedent Largent from violence perpetrated by Frye.

45. Later that same day, at approximately 10:12 p.m., WCI personnel were distributing medication to the segregation unit in which Decedent Largent and Frye were housed. When Officer Davis peered into cell A12, Frye stated: "something is wrong with him." Frye simultaneously gestured to Decedent Largent who was observed lying on the floor of the cell, face up, with his legs partially beneath a bunk. Decedent Largent was observed to have visible bruising about his face and a laceration on his left arm. A pillowcase that had been wrapped around Decedent Largent's neck was still in place, and there was also a large pool of blood present on the left side of his body.

46. WCI correctional officers immediately removed Frye from cell A12. As he was being directed away from the scene, Frye uttered: "The devil made me do it."

47. Responding staff undertook resuscitative efforts until paramedics arrived at the facility. Thereafter, communication was initiated with a physician at an outside medical center. Decedent Largent was pronounced dead at 10:37 p.m.

48. Cell A12 was secured by Department of Correction staff members. Maryland State Police Crime Scene Technicians were subsequently escorted to the tier and then sketched and photographed the scene. The cell was also thoroughly searched by responding investigators.

49. Following scene processing, Decedent Largent's body was removed from the cell and transported to the Office of the Medical Examiner for the State of Maryland. The medical examiner ultimately determined the cause of death to be blunt force head injuries.

50. On Sunday, February 12, 2017, investigators returned to the WCI facility. Frye was photographed by crime scene technicians and provided a voluntary statement after waving his *Miranda* rights. During the interrogation, which spanned approximately one hour, Frye reported ongoing disagreements with Decedent Largent, and stated that on the date of the subject occurrence he had "blacked out" and that his next recollection was observing Decedent Largent lying dead on the cell floor.

51. Four days after Decedent Largent was murdered in his cell, the conviction that had prompted his incarceration was vacated by the Maryland Court of Special Appeals in the matter styled *Roger Lee Largent v. State of Maryland,* September Term 2016 No. 587. The alleged victim in the encounter underpinning *State of Maryland v. Roger Lee Largent*, Washington County Circuit Court Case No. 21-K-15-051744 later recanted her testimony.

52. On February 21, 2018, Frye plead guilty to Second Degree Murder in the matter styled *State of Maryland v. Donte Antonio Frye*, Alleghany County Circuit Court Case No. C-01-CR-18-000128.

53. At all times relevant to this Complaint, agents, servants and employees of Department of Public Safety and Correctional Services of the Maryland State Government, including but not limited to Former Warden Richard J. Graham, Jr., were responsible for overseeing, supervising and protecting the inmates housed in WCI including Decedent Largent while he was in the segregation area of the facility.

54. At all times relevant to this Complaint, the Department of Public Safety and Correctional Services of the Maryland State Government, as well as its agents, servants and employees, including but not limited to Former Warden Richard J. Graham, Jr., were on notice (actual or constructive) that Donte Antonio Frye posed an immediate threat of violence and/or unreasonable hazard to inmates housed at the WCI. Given the circumstances of the intense prolonged confinement of Administrative Segregation and Frye's reports to correctional officers of an ongoing dispute with Decedent Largent, the DPSCS, its agents, servants and employees, including but not limited to Former Warden Richard J. Graham, Jr., further knew or reasonably should have known of a particular and enhanced risk of harm to Decedent Largent.

55. Defendant State of Maryland through its agents, servants, and/or employees, including but not limited to Richard J. Graham, Jr., conducted itself in a negligent and careless manner.

56. At all times relevant hereto, Defendant State of Maryland owed as continuing duties to Defendant Richard J. Graham, Jr. was responsible for, among other things, maintain order and daily operations of the facility; ensure the safety of inmates; and protect inmates from physical attacks perpetrated by other inmates.

57. At all times relevant to this complaint, Decedent Largent was free of any negligence and/or contributory negligence.

58. That Defendant State of Maryland's negligence proximately caused Decedent Largent to suffer serious and painful physical injuries and ultimately death, and Defendant Graham's willful conduct proximately caused Decedent Largent to suffer serious and painful physical injuries and ultimately death.

59. In addition to the physical injuries described herein, Decedent Largent suffered the following injuries and damages as a direct proximate result of actions by Defendants:

    a. Violation of his well-established constitutional rights under the Eighth and Fourteenth Amendment of the United States Constitution to the security of his person; freedom from violence at the hands of other prisoners; and not to be subjected to cruel and unusual punishment while incarcerated;

    b. Violation of his constitutional rights under the Maryland Declaration of Rights clearly established and well settled state constitutional rights under the Maryland Declaration of Rights Articles 24 and 26 including, but not limited to: security of his person; freedom from violence at the hands of other prisoners; and not to be subjected to cruel and unusual punishment while incarcerated; and

    c. Physical pain and suffering.

60. The actions of actions by Defendants violated the following clearly established and well settled federal and state constitutional rights of Decedent Largent:

    a. Security of his person;

    b. Freedom from violence at the hands of other prisoners; and

    c. Not to be subjected to cruel and unusual punishment while incarcerated;

## COUNT I – SURVIVAL ACTION
*(Lorretta Kline, Personal Representative for the Estate of Roger Lee Largent v. State of Maryland, Maryland Department of Public Safety and Correctional Services)*

61. Plaintiff re-alleges and incorporates paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62. Pursuant to MARYLAND ANNOTATED CODE, *Estates and Trusts Article* § 7-401(y), Plaintiff Loretta Kline is authorized to bring a survival action as the Personal Representative of the Estate of Roger Lee Largent.

63. Defendant State of Maryland through its agents, servants, and/or employees conducted itself in a negligent and careless manner.

64. At all times relevant hereto, Defendant State of Maryland and Former Warden Richard J. Graham, Jr. owed continuing duties to, among other things, maintain order and daily operations at the WCI; ensure that reports of physical threats and the need for protective custody placements were appropriately evaluated; ensure that inmates, including those housed in Administrative Segregation, received necessary monitoring, supervision and protection; otherwise ensure the safety of inmates; protect inmates from preventable physical injury; to deescalate conflicts between inmates; to promptly and adequately screen inmates and evaluate for the possibility and likelihood of future violence; segregate inmates who historically assaulted cellmates, as well as, those who were in need of a Protective Custody assignments; respond and act upon reports of discord, tension and conflict; and actively intervene and deescalate ongoing assaults that it knew of or reasonably should have been aware of. Defendant State of Maryland and Former Warden Richard J. Graham, Jr. owed additional duties which are not expressly stated herein.

65. Defendant State of Maryland and Former Warden Richard J. Graham, Jr. breached said duties by, among other things, ignoring Decedent Largent's continuing reports that he had been threatened with violence, as well as his request to be placed in protective custody; continuing Decedent Largent in prolonged segregation despite notice and understanding that his alleged

infraction of "refusing housing" stemmed from his fear of being returned to the general pollution portion of WCI where he believed he would be assaulted; refusing to evaluate Decedent Largent for protective custody or a transfer out of the facility; placing Decedent Largent in close and intense confinement with Frye, who was at all times known to be assaultive and designated for maximum security detention; by failing to evaluate and/or otherwise accommodate Decedent Largent's request for placement in Protective Custody; by failing separate Frye from other inmates at WCI despite his history of assaultive behavior and reported mental health problems; by failing to consider either Decedent Largent or Frye for available single-cell accommodations; by failing to take action when Frye and Decedent Largent reported ongoing disagreements; by failing to have correctional officers and or surveillance equipment present in the segregation unit and/or an alternative means of monitoring the conduct of individuals housed in the segregation unit; by failing to adequately protect Decedent Largent from physical attacks perpetrated by other inmates; and by failing to otherwise act to ensure the safety of Decedent Largent. Defendant State of Maryland and Former Warden Richard J. Graham, Jr. was negligent in other respects which are not specifically enumerated herein.

66. As a direct proximate result of the negligent conduct described herein, Decedent Largent suffered excruciating physical pain, mental anguish and emotional suffering and suffered a tragic and untimely death.

WHEREFORE, Lorretta Kline as Personal Representative of The Estate of Roger Lee Largent, demands judgment against the Department of Public Safety and Correctional Services for actual, compensatory and consequential damages in an amount to be determined at trial, and further requests that this Honorable Court award reasonable attorney's fees and the costs

incurred in connection with this action, and such other and further relief as it may deem
appropriate.

## COUNT II – WRONGFUL DEATH ACTION
*(Lorretta Kline v. State of Maryland,*
*Maryland Department of Public Safety and Correctional Services)*

67. Plaintiff Lorretta Kline hereby incorporates Paragraphs 1 through 66 as if fully restated
herein.

68. Pursuant to MARYLAND ANNOTATED CODE, *Courts & Judicial Article* § 3-904, Lorretta
Kline, adult biological daughter of Decedent Largent, is a primary beneficiary entitled to pursue
an action under Maryland's "Wrongful Death Statute" against Defendant the Maryland
Department of Public Safety and Correctional Services.

69. At all times relevant to this Complaint, the Maryland Department of Public Safety and
Correctional Services was vicariously liable for the acts and omissions of its actual and apparent
agents, servants, and/or employees at WCI.

70. Defendant Maryland Department of Public Safety and Correctional Services and Former
Warden Richard J. Graham, Jr. was negligent, in among other things, failing to adequately, train,
supervise, and instruct its agents, servants and employees; failing to have in place safe practices
for the monitoring of inmates; failing to have in place proper procedures, protocols and channels
of communication to the respond to requests concerning necessary protection, disputes and
reassignments to address and/or quell ongoing disputes; failing to properly and adequately assess
Frye as an unreasonable threat to any individual who was housed with him in Administrative
Segregation; failing to evaluate and/or otherwise accommodate Decedent Largent's request for
placement in Protective Custody; failing to separate Frye from other inmates at WCI despite his
history of assaultive behavior and reported mental health problems; failing to take action when

Frye and/or Decedent Largent reported ongoing disagreements; failing to have correctional officers and or surveillance equipment present in the segregation unit and/or an alternative means of monitoring the conduct of individuals housed in the segregation unit; and failing to intervene in a timely manner to prevent severe injuries and death.

71. The Maryland Department of Public Safety Correctional Services, as well as, its agents, servants and/or employees and Former Warden Richard J. Graham, Jr. committed other acts of negligence which are not expressly enumerated herein.

72. As a direct and proximate result of the negligent conduct by Maryland Department of Public Safety Correctional Services and Former Warden Richard J. Graham, Jr., Plaintiff Lorretta Kline as the only biological child of Decedent Roger Lee Largent, suffered and sustained pecuniary loss; mental anguish; emotional pain and suffering; loss of monetary earnings, contributions and support; loss of services; loss of comfort; loss of solace; loss of society; loss of companionship; loss of protection; loss of filial care; loss of attention; loss of advice; loss of counsel; and loss of guidance and are entitled to recover such damages as a consequence of her father's tragic and untimely death.

73. This Complaint is timely filed within three years after the death of Roger Lee Largent pursuant to MARYLAND ANNOTATED CODE, *Courts & Judicial Proceedings Article* §3-904(g).

WHEREFORE, Plaintiff Lorretta Kline demands judgment against the Maryland Department of Public Safety Correctional Services for actual, compensatory and consequential damages in an amount to be determined at trial, and further requests that this Honorable Court award reasonable attorney's fees, the costs incurred in connection with this action, and such other and further relief as it may deem appropriate.

## COUNT III – VIOLATION OF 42 U.S.C. 1983 – FOURTH AND FOURTEENTH AMENDMENTS

74. Lorretta Kline as the Personal Representative of the Estate of Roger Lee Largent hereby incorporates Paragraphs 1 through 73 as if fully restated herein.

75. At all times relevant to this Complaint, Decedent Largent had rights afforded to him by the Eighth and Fourteenth Amendments to the United States Constitution including the right to be free from cruel and unusual punishment while incarcerated.

76. At all times relevant herein, Defendant Graham was the Warden at WCI with responsibility for operation, control and security at the facility. Warden Graham's responsibilities included, among other things. security assessment and placement of inmates within the facility, the operation of the Administrative Segregation unit of the facility; operation of the ARP Office; and staffing.

77. Defendant Graham allowed Decedent Largent to be continued in Administrative Segregation even after it was known that the latter was attempting to evade a perceived threat of bodily injury in the general population of the facility and despite numerous requests for placement on Protective Custody.

78. Defendant Graham further allowed Frye, who was known to assault cellmates and suffer from mental illness, to be housed in close and extreme confinement with other inmates including Decedent Largent.

79. At all times relevant to this Complaint it was reasonably foreseeable and anticipated that Frye might cause extreme bodily injury to the Decedent Largent when they were housed to together in Cell A12. Defendant Graham knew, or reasonably should have known, of the inevitability of a physical confrontation between Frye and Decedent Largent as a result of Frye's reports concerning his ongoing dispute with Decedent Largent.

80. Despite his knowledge of the real and present danger to Decedent Largent, Defendant Graham continued Decedent Largent in the Administrative Segregation with Frye.

81. Defendant Graham's actions and his disregard were made under the color of State and local law and as a Warden of WCI. His conduct therefore triggers 42 U.S.C. §1983.

82. Moreover, Defendant Graham acquiesced in, tolerated and permitted a pattern and practice of unlawful, improper and unconstitutional behavior at the WCI; failed to properly and appropriately investigate incidents of assault within the inmate community, including those perpetrated by Frye; failed to correct the unconstitutional conduct of Correctional Officers and Staff working at the facility; failed to properly and adequately supervise staff at the WCI; and otherwise engaged in, or failed to engage in, other supervisory conduct that would have deterred and or prevented Eight Amendment violations at the facility.

83. Defendant Graham's actions and omissions deprived Decedent Largent of his clearly established and well-settled constitutional rights.

84. Defendant Graham's knowingly acted to deprive the Decedent of his constitutional rights maliciously and with reckless disregard for the same.

85. The Estate of Roger Lee Largent accordingly claims damages under 42 U.S.C. § 1983, against Defendant Graham, for the violation of his constitutional rights under color of law.

WHEREFORE, Lorretta Kline as Personal Representative of The Estate of Roger Lee Largent, demands judgment against Defendant Richard J. Graham, Jr. for actual, compensatory and consequential damages in an amount to be determined at trial, and further requests that this Honorable Court award reasonable attorney's fees and the costs incurred in connection with this action under 42 U.S.C. § 1988, and also grant such other and further relief as it may deem appropriate.

## COUNT IV – VIOLATION OF
## MARYLAND STATE DECLARATION OF RIGHTS
*(Lorretta Kline, Personal Representative for the Estate of Roger Lee Largent v.
State of Maryland, Maryland Department of Public Safety and Correctional Services
And Richard J. Graham, Jr.)*

86. Lorretta Kline as the Personal Representative of the Estate of Roger Lee Largent hereby incorporates Paragraphs 1 through 85 as if fully restated herein.

87. The actions of agents, servants, and/or employees of Department of Public Safety and Correctional Services and Defendant Richard J. Graham, Jr., all of which were committed under the color of their authority as correctional officers and administrators at the WCI, violated the Maryland Declaration of Rights, including, but not limited to: (1) Freedom from violence at the hands of other prisoners.

88. As a result of the above-described acts attributed to Defendant State of Maryland and Former Warden Richard J. Graham, Jr., Defendant Largent was deprived of rights and immunities secured to him under the Maryland Declaration of Rights – in particular, his rights to the security of his person; freedom from violence at the hands of other prisoners; and not to be subjected to cruel and unusual punishment while incarcerated.

89. As a direct consequence in result of the actions and omissions of Defendant State of Maryland and Former Warden Richard J. Graham, Jr. described herein, Defendant Largent was deprived of his liberty; and was caused to suffer physical injuries and death.

90. Pursuant to the Maryland State Tort Claims Act, MARYLAND ANNOTATED CODE, *State Government Article* §§ 12-101, *et seq,* the State of Maryland has waived its sovereign immunity and assumed liability for the actions of its agents, servants, and/or employees, who were at all times hereto acting within the scope of their employment at WCI. Defendant State of Maryland is accordingly responsible for the actions and proximately related damaged referenced herein.

WHEREFORE, Lorretta Kline as Personal Representative of The Estate of Roger Lee Largent, demands judgment against Defendants State of Maryland and Warden Richard J. Graham, Jr., jointly and severally, for compensatory damages in an amount to be determined at trial (with consideration that the claim in the instant case exceeds $75,000.00), and further requests that this Honorable Court award reasonable attorney's fees, the costs incurred in connection with this action, and such other and further relief as it may deem appropriate.

Respectfully Submitted,

IAMELE & IAMELE, LLP

/s/
_____
Anton L. Iamele
Client Protection Fund #: 9812160049
201 North Charles Street, Suite 400
Baltimore, MD 21201
Telephone: 410-779-6160
Facsimile: 410-779-6161
aiamele@iamelelaw.com
*Counsel for Lorretta Kline and the*
*Estate of Roger Lee Largent*

Kazary & HARE, P.C.

/s/
_____
David J. Hare e
Client Protection Fund #: 9812160049
127 Greene Street
Cumberland, MD 21502
Telephone: 301-777-8822
Facsimile: 301-777-1629
david@khwattorneys.com
*Counsel for Lorretta Kline and the*
*Estate of Roger Lee Largent*

## JURY TRIAL PRAYER

Plaintiffs hereby request that all issues raised in this Complaint be decided by way of a jury trial.

_____/s/_____
Anton L. Iamele

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this **3rd** day of **August, 2020**, a copy of the foregoing was

transmitted by way of this Court's electronic filing system, to the following:

Michael O. Doyle, Esquire
Matthew M. Mellady, Esquire
Office of the Attorney General
Department of Public Safety
and Correctional Services
300 East Joppa Road, Suite 1000
Towson, MD 21286

_____/s/_____
Anton L. Iamele